# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: | |
| Smith Development, Inc. | Case No. 09-10078-KHK |
| Debtor. | (Chapter 7) |
| Martin C. Conway,<br>PESNER KAWAMATO CONWAY, P.C.,<br><br>Plaintiffs.<br><br>v.<br><br>Smith Development, Inc.,<br><br>Defendant. | AP No. 21-01020-KHK |

## **Report and Recommendation**

This matter comes before the Court on the Plaintiffs' complaint (Adv. Pro. Case 21-01020, Docket No. 1) seeking a determination that (1) the Debtor violated the automatic stay and (2) the Debtor violated the *Barton* Doctrine, in both cases, when the Debtor filed legal malpractice lawsuits against the Plaintiffs in the Alexandria Circuit Court without first seeking permission from this Court. On April 22, 2021, an evidentiary hearing was held. At the outset, the Court heard and denied the Debtor's Motion in Limine (Bankr. Docket No. 269) and the Debtor's Motion to Dismiss (Adv. Pro. Case 21-01020, Docket No 13). Both preliminary motions were premised on overturning the final and now unappealable order authorizing the chapter 7 trustee's retention of Conway and his firm.[1] At the conclusion of the evidentiary hearing, the Court took the matter under advisement and entered a bridge order temporarily staying the 2019 Malpractice Action (defined below) until this Court rendered a final decision on the Plaintiffs' Complaint. Upon consideration of the evidence presented, arguments of counsel, and for the reasons stated below, the Court

---

[1] For the same reason the Court denied the Debtor's Motion in Limine and Motion to Dismiss at the outset of the evidentiary hearing, the Court will also decline to address the Debtor's repeated arguments that this Court should invalidate the Order approving Conway and his firm's retention (Bankr. Docket No. 157) (the "Retention Order").

reports and recommends[2] to the District Court that it (i) find that the Debtor's conduct violated the *Barton* doctrine, (ii) find that through filing Count I of the Malpractice Actions (defined below), the Debtor and its counsel willfully violated the automatic stay, (iii) enjoin the 2019 Malpractice Action, and (iv) enter judgment in favor of the Plaintiffs in the amount of $207,211.72, representing the costs the Plaintiffs were forced to incur in defending against the Malpractice Actions.

## Uncontested Facts

The Court finds that the following facts are not genuinely in dispute:

On January 6, 2009, Smith Development, Inc., (the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Bankr. Docket No. 1. Prior to filing for bankruptcy protection, the Debtor was in the business of building residential homes. When the 2008 housing crisis struck, the Debtor's business experienced a downturn due to weak demand and an over-leveraged balance sheet. On March 20, 2009, the Court authorized the Debtor's retention of Martin C. Conway and his law firm, Pesner Kawamoto Conway, P.L.C. (hereinafter collectively referred to as "Conway and his firm", or the "Plaintiffs"), as counsel to the Debtor, pursuant to 11 U.S.C. §327.

**The Settlements**

On November 5, 2009, the Debtor filed an adversary complaint against Robert Samia ("Samia" and such adversary proceeding, the "Samia Adversary Proceeding") seeking damages for Samia's alleged default on a home buying contract. Adv. Pro. Case No. 09-01352, Docket No. 1.

On March 1, 2010, the Debtor filed two additional adversary complaints. One was an adversary complaint against Heidi Ellenberger Jones, Beth Ellenberger Bradford and Walter H. Ellenberger (collectively, the "EBJ Defendants" and such adversary proceeding, the "EBJ Adversary Proceeding"),

---

[2] Because the Debtor has repeatedly challenged this Court's authority to hear and decide issues related to this matter, the Court will issue a report and recommendation to the District Court to alleviate any Article III concerns the Debtor may have. Accordingly, because the Court is issuing a Report and Recommendation to the District Court, it declines to reach any of the Debtor's arguments that *Stern* precludes injunctive relief in this case.

seeking damages for the EBJ Defendants' alleged default on a home buying contract. Adv. Pro. Case No. 10-01072, Docket No. 1. The other was a complaint against Mehdi Hasheminejad ("Hasheminejad" and such adversary proceeding, the "Hasheminejad Adversary Proceeding")[3] seeking damages for Hasheminejad's alleged default under a home buying agreement. Adv. Pro. Case No. 10-01073, Docket No. 1.

Subsequently, the case was converted to chapter 7. Bankr. Docket No. 137. Post-conversion, Richard A. Bartl was appointed as chapter 7 trustee (the "Trustee"). Bankr. Docket No. 138. Thereafter, the Trustee sought and obtained this Court's authorization to retain Conway and his firm as special counsel to the Trustee for the purpose of recovering damages from certain defaulting homebuyers. Bankr. Docket No. 155, 157. In the application to employ and associated filings, it was disclosed that Conway and his firm were owed $55,000 in connection with the chapter 11 phase of the case. Bankr. Docket No. 155. No objections were filed in connection with Conway and his firm's retention.

Upon review of the Debtor's schedules, the strengths of the Settled Adversary Proceedings and after negotiating with counsel for the relevant defendants, the Trustee decided to settle all the Settled Adversary Proceedings. Bankr. Docket Nos. 162, 176, 190 (Trustee's notices of settlements).

The Samia Adversary Proceeding settlement provided for a $15,000 payment from Samia to the estate, and mutual releases by the estate and Samia (the "Samia Settlement"). Bankr. Docket No. 176. No formal objections were filed in connection with the Samia Settlement, but the Court notes that Kevin M. Smith, the Debtor's sole shareholder, in his response to the Trustee's Motion to Show Cause (Bankr. Docket No. 168) asserts that the Trustee is settling adversary proceedings for "worst case scenario" amounts. *See* Bankr. Docket No. 177. As there were no objections, no hearing was held, and the Court approved the Samia Settlement as a sound exercise of the Trustee's business judgment. Bankr. Docket No. 182.

---

[3] This Report and Recommendation will refer to the Samia Adversary Proceeding, the EBJ Adversary Proceeding, and the Hasheminejad Adversary Proceeding collectively as the "Settled Adversary Proceedings."

The EBJ Adversary Proceeding settlement provided for, among other things, a $25,000 payment from the EBJ Defendants to the estate, and mutual releases by the estate and the EBJ Defendants (the "EBJ Settlement").  Bankr. Docket No. 162.  No creditor objected to the EBJ Settlement, but Kevin M. Smith, the Debtor's sole shareholder, objected on the theory that the settlement price was too low.  Bankr. Docket No. 164.  On March 8, 2011, the Court held a hearing on the EBJ Settlement and responses thereto.  At the conclusion of the hearing the Court overruled the objection and approved the EBJ Settlement as a sound exercise of the Trustee's business judgment.  Bankr. Docket Nos. 167, 170.

The Hasheminejad Adversary Proceeding settlement provided for a $20,000 payment from Hasheminejad to the estate, and mutual releases by the estate and Hasheminejad (the "Hasheminejad Settlement", and together with the Samia Settlement and the EBJ Settlement, the "Settlements").  Bankr. Docket No. 190.  No objections were filed in connection with the Hasheminejad Settlement.  As there were no objections, no hearing was held, and the Court approved the Hasheminejad Settlement as a sound exercise of the Trustee's business judgment.  Bankr. Docket No. 191.

Following approval of the Settlements, the Court ultimately approved Conway and the firm's fees for work performed during the chapter 7 phase of the case.  Bankr. Docket No. 202.  These Settlements would become the subject of two malpractice suits filed by Smith Development, Inc. in the Alexandria Circuit Court.

In December of 2011, the Court approved the Trustee's Final Report.  Bankr. Docket Nos. 208, 210.  On September 6, 2012, the case was closed.  Bankr. Docket No. 215.

**The 2017 Malpractice Action**

On April 28, 2017 Smith Development filed a complaint against Conway and his firm for alleged negligence in (i) representing the Debtor during the chapter 11 phase of the case, and (ii) settling three adversary proceedings during the chapter 7 phase of the case.  *See* Adv. Pro. Case No. 21-01020, Docket No. 1-2 (the "2017 Malpractice Action").

With respect to the chapter 11 phase, among other things, the Debtor asserted that Conway and the firm fell below the requisite standard of care for chapter 11 practitioners in administering the case, proposing plans, and specifically for allegedly failing to preserve what Kevin M. Smith referred to as a claim for a $787,359 personal loan he made to the Debtor upon the case converting to chapter 7. *Id.* at pgs. 8-11. Smith also complained that Conway and the firm were ineffective in defending against stay relief efforts and failed to adequately resist what Smith characterizes as "unduly harsh" terms in a consent order resolving a creditor's motion for relief from the automatic stay. *Id*. at pg. 12. With respect to the chapter 7 phase, Smith asserted that Conway and the firm were negligent in settling the Settled Adversary Proceedings because, according to Smith, the total settlement price of $60,000 was too low. *Id.* at pgs. 15-19. The 2017 Malpractice Action was ultimately nonsuited by the Debtor.

**The 2019 Malpractice Action**

On April 11, 2019, Smith Development Inc. filed a new complaint in the Alexandria Circuit Court, asserting largely the same causes of action and theories against Conway and his firm that were alleged in the 2017 Malpractice Action (the "2019 Malpractice Action" and together with the 2017 Malpractice Action, the "Malpractice Actions"). On July 25, 2019, the Debtor filed a motion in this Court to reopen its bankruptcy case to seek, among other things, permission under the *Barton* Doctrine to file a legal malpractice action against Conway and his firm. Bankr. Docket No. 220.

On October 8, 2019, the Court held a hearing on the Debtor's Motion to Reopen. The Court ultimately denied the Motion to reopen, finding that *Barton* applied to these claims, that the Debtor had no standing to pursue claims related to the chapter 11 phase of the case because they were estate property that had not been abandoned to the Debtor, and that in any event, the relevant statutes of limitations had run on the asserted claims, making the motion to reopen futile. October 8, 2019 Hr. Tr. 21:1-16 (Bankr. Docket No. 237); Bankr. Docket No. 230. The Debtor subsequently moved for reconsideration of the Order denying the Debtor's Motion to Reopen, arguing for the first time that the Debtor did not seek to sue Conway and his firm as counsel to the Trustee, but instead as counsel to the Debtor, even though the alleged

5

malpractice occurred post-conversion. The Court also denied this motion, and in the process of doing so explained to the Debtor and Mr. Lopatto that Conway and his firm no longer represented the Debtor post-conversion because the representation ended as a matter of law on the conversion date. February 11, 2020 Hr. Tr. 17:14–17 (Bankr. Docket No. 246). *See* Bankr. Docket Nos. 228, 249. The Debtor also noticed an appeal for this denial but subsequently voluntarily dismissed the appeal on April 1, 2020. Bankr. Docket No. 257.

On March 12, 2020, the Debtor filed an amended complaint in the 2019 Malpractice Action (the "Amended Complaint"), asserting, just as it did in arguing its motion to reconsider in this Court, that Conway and the firm were not being sued as counsel to the Trustee, but instead, as counsel to the Debtor. The Amended Complaint removed allegations related to the chapter 11 phase of the case, but at its core maintained the allegations regarding Conway and his firm's alleged malpractice in settling the Settled Adversary Proceedings.

On January 27, 2021, Conway and his former firm filed a motion to reopen the bankruptcy case and for relief and damages due to Smith Development, Inc.'s violation of the *Barton* Doctrine. Bankr. Docket No. 259.

**Conclusions of Law**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984.

As this motion concerns a malpractice action against an estate professional, this is a core claim. 28 U.S.C. 157(B). However, because the Debtor has repeatedly challenged this Court's authority to hear and decide issues related to this matter, the Court will issue a report and recommendation to the District Court to alleviate any Article III concerns the Debtor may have.

As the Fourth Circuit held in *McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012):

6

> The Supreme Court established in Barton that before another court may obtain subject-matter jurisdiction over a suit filed against a receiver for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver. See *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004). This principle has been extended to suits against bankruptcy trustees, *see id*; *Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 971 (9th Cir. 2005), and to suits against trustees' attorneys, *see Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006). To determine whether a complained-of act falls under the Barton doctrine, courts consider the nature of the function that the trustee or his counsel was performing during commission of the actions for which liability is sought. *See Heavrin v. Schilling (In re Triple S Rests., Inc.)*, 519 F.3d 575, 578 (6th Cir. 2008). When trustees act "within the context" of their role of "recovering assets for the estate," leave must be obtained. Id. Acts are presumed to be part of the duties of the trustee or his counsel "unless Plaintiff initially alleges at the outset facts demonstrating otherwise." *In re Lowenbraun*, 453 F.3d at 322 (internal quotation marks omitted).
>
> The Barton doctrine serves the principle that a bankruptcy trustee "is an officer of the court that appoints him," and therefore that court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties." *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996). "Without the requirement [of obtaining leave], trusteeship w[ould] become a more irksome duty, and so it w[ould] be harder for courts to find competent people to appoint as trustees. Trustees w[ould] have to pay higher malpractice premiums, and this w[ould] make the administration of the bankruptcy laws more expensive." *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). The doctrine also enables bankruptcy courts to monitor the work of the trustees they have appointed so that the courts may be fully informed when they make future appointments. *See id*.

Id., at 156-57; *see also In re Providence Hall Assocs. Ltd. P'ship*, No. 11-11656-BFK, 2018 WL 8577031, at *8–9 (Bankr. E.D. Va. Dec. 21, 2018), report and recommendation adopted sub nom. *Providence Hall Assocs. Ltd. P'ship v. Albert*, No. 1:19-CV-112, 2019 WL 1223307 (E.D. Va. Mar. 15, 2019).

In the case at bar, the Malpractice Actions clearly violated the *Barton* Doctrine. The Malpractice Actions seek to recover damages from Conway and his firm in relation to their representation of the Trustee in connection with the Settled Adversary Proceedings. Conway and his firm's actions were clearly taken in furtherance of the trustee's duties to recover assets for the estate (e.g., through settling adversary proceedings). Although the Debtor attempted to conjure up an *ultra vires* argument by seeking to invalidate the Retention Order, such argument was not raised (in the state court) until the Amended Complaint was filed in the 2019 Malpractice Action, and in any event, was rejected by this Court's ruling on the Debtor's Motion in Limine and the Debtor's Motion to Dismiss. It is indisputable that the Debtor did not seek prior

permission from this Court before commencing the 2019 Malpractice Action. Accordingly, the Court will recommend that the District Court find that the 2017 Malpractice Action and the 2019 Malpractice Action violated the *Barton* Doctrine.

Additionally, it is beyond dispute that Count I of the Malpractice Actions (prior to being removed in the Amended Complaint) violated the automatic stay, as that cause of action was never abandoned by the Trustee and remains property of the bankruptcy estate. October 8, 2019 Hr. Tr. 21:1-16 (Bankr. Docket No. 237) (Court ruling that Count I of the Malpractice Actions constituted estate property). 11 U.S.C. § 362(a)(3) (acts to exercise control over property of the estate violate the automatic stay). Here, the commencement of the lawsuit constituted an act to exercise control over property of the estate. Accordingly, the Court finds that a stay violation has occurred. Whether the stay violation was willful depends on whether the Debtor knew of the existence of the stay, and whether it intentionally undertook actions that violated the stay, notwithstanding that knowledge. *In re Seaton*, 462 B.R. 582, 592 (Bankr. E.D. Va. 2011). Here, it is clear the Debtor knew of the automatic stay. First, the Debtor and its counsel knew the claims were not abandoned, and thus property of the estate protected by the automatic stay, at least as early as 2014 when the Debtor filed its motion to compel abandonment. Bankr. Docket No. 217. It is beyond question that the Debtor and its counsel knew of the existence of the automatic stay— his 2017 Malpractice Action complaint specifically complained about Conway and his firm's handling of a lift stay consent order, evidencing knowledge of the stay at the time that complaint was filed. *See* Adv. Pro. Case No. 21-01020, Docket No. 1-2, at pgs. 15-19. Finally, it goes without saying that the Debtor and its counsel were aware of the Debtor's own bankruptcy case. Accordingly, the Court recommends that the District Court find that the Debtor and its counsel willfully violated the automatic stay.

The Court will now determine the appropriate recommended sanction.

**Sanctions**

Conway and his firm have requested (i) that the 2019 Malpractice Action be enjoined; and (ii) an award of damages, both for the *Barton* Doctrine violations and the automatic stay violation. The Debtor argues that there is no authority for a bankruptcy court enjoining a state court action and awarding damages for violations of the *Barton* doctrine.[4] April 22, 2021 Hr. Tr. 131:9-12 (Bankr. Docket No. 280). This Court disagrees. Courts have expressly held that bankruptcy courts can order both injunctive relief and the recovery of damages for violations of the *Barton* Doctrine. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236 (6th Cir.1993); *In re EBW Laser, Inc.*, No. 05-10220C-7G, 2012 WL 3490417, at *7 (Bankr. M.D.N.C. Aug. 14, 2012). And while the Court disagrees with the Debtor's assertion that the Court lacks constitutional authority to order such relief, the Court declines to further address the argument given that it is issuing this Report and Recommendation to the District Court.

While it is true that permanent injunctions should not be necessary in light of the *Barton* Doctrine's command, the Debtor's pattern of filing suits against estate professionals without obtaining *Barton* permission from the appointing court necessitates such an injunction. Indeed, despite the Debtor's knowledge that it needed permission to commence lawsuits against estate professionals, it proceeded to commence the 2019 Malpractice Action (which was a substantive repeat of the 2017 Malpractice Action). When the Debtor received a ruling it did not like, it repeated its arguments, seeking additional bites at the proverbial apple (e.g., the debtor's repeated attempts to invalidate the Retention Order). This conduct has necessitated a vigorous dual-jurisdiction defense from Conway and his firm and is exactly the type of behavior the *Barton* Doctrine aims to prevent. A Permanent Injunction will serve the goal of protecting Conway and his firm from further defense costs, will deter further *Barton* violations from the Debtor and will curb collateral attacks on final orders like those the Debtor has raised in the instant case and in the Malpractice Actions. And, while the Court recommends that the District Court enjoin the 2019 Malpractice

---

[4] It appears the Debtor does not question this Court's ability to enter a damages award for an automatic stay violation. *See* 11 U.S.C. § 362(k) (providing authority to award damages for automatic stay violations). Further, this Court is confident that no *Stern* issue exists with respect to an award of damages for a stay violation. However, in order to facilitate efficient judicial review of these matters, the Court will include the stay violation damages within this Recommendation, rather than issue a separate award of damages.

Action, the Court finds that an award of damages is also necessary to compensate Conway and his firm for the costs they expended defending against the *Barton* Doctrine and automatic stay violations.

It is well settled that the *Barton* Doctrine's purpose is to prevent a trustee from having to expend resources defending against a lawsuit that has not been authorized by the appointing court. *Providence Hall Assocs. Ltd. P'ship v. Albert*, No. 1:19-CV-112, 2019 WL 1223307, at *1 (E.D. Va. Mar. 15, 2019), appeal dismissed sub nom. *In re Providence Hall Assocs. Ltd. P'ship*, No. 19-1296, 2019 WL 4464515 (4th Cir. May 8, 2019) ("The *Barton* doctrine was designed to protect Defendant from the need to take any action to defend himself from a suit filed in state court unless the suit was pre-authorized by the bankruptcy court that appointed him").  Further, section 362(k) of the Bankruptcy Code provides authority for this Court to award compensatory damages for willful violations of the automatic stay.  11 U.S.C. § 362(k).  In the case at bar, Conway and his firm were forced to expend funds defending malpractice lawsuits that were filed without previous authorization from this Court and in the case of Count I of the Malpractice Actions, in violation of the automatic stay.  As previously noted, the Court has recommended a finding that the violation of the automatic stay was willful.  As a result, the only question before the Court is whether the funds expended by Conway and his firm were reasonable and necessary, as determined under the Fourth Circuit's *Kimbrell* factors[5].

Conway and his firm argue that the fees sought are reasonable, relying on an expert report and expert testimony from Mikhael D. Charnoff, a civil litigator experienced in reviewing and assessing the reasonableness of litigation fees.

---

[5] These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

At the evidentiary hearing, Mr. Charnoff was cross examined and admitted, with the Debtor's acceptance, as an expert in the reasonableness and necessity of attorney fees. Mr. Charnoff testified that he produced his report by analyzing the invoices of fees for legal work performed by counsel for Conway and his firm. Adv. Pro Case No. 21-01020, Docket No. 17-22 (the "Expert Report"). Mr. Charnoff testified that he reviewed the relevant documents from the state court and bankruptcy court, including pleadings, discovery and other correspondence, and also analyzed the fees using a standard Lodestar analysis, the required analysis under the *Kimbrell* factors. Mr. Charnoff also compared the rates charged in this case to those charged by other practitioners in Northern Virginia. Mr. Charnoff testified that the fees themselves were reasonable, with no significant block billing or duplication of effort and that the work performed was necessary. Mr. Charnoff also testified and reported that the applicable attorney rates were also well below the prevailing rates in Northern Virginia. The Court finds that Mr. Charnoff undertook a thorough and thoughtful review of the reasonableness of the fees in this case, and further, that his testimony was extremely credible and helpful to the Court in assessing the reasonableness and the necessity of the fees incurred in this case.

Although the Debtor points out that these fees include work on motions that Conway and his firm may have been unsuccessful in pursuing, the fact remains that Conway and his firm would not have incurred fees if the Debtor had not violated the *Barton* doctrine in filing and prosecuting the Malpractice Actions.

Upon review of the time records in this case, the Court agrees with the reasonableness assessment-- in particular the *Kimbrell* analysis -- contained in the Expert Report. *See* Expert Report, pgs. 9-12. Further, the Court notes that the Debtor has lodged no objection to the Expert Report or the reasonableness of the asserted fees (beyond arguing that this Court has no authority to award them). The Court therefore recommends adoption of the Expert Report in this case and recommends that based on the Expert Report and the Court's review of the fees in this case, that the District Court award Conway and his firm $207,211.72, representing the reasonable and necessary legal fees incurred defending against the Debtor's lawsuits filed in violation of the *Barton* Doctrine.

Accordingly, based on the foregoing, it is hereby

**ORDERED**:

(a) The Court recommends that the District Court:

   (i) find that through filing the 2017 Malpractice Action and the 2019 Malpractice Action, the Debtor and its counsel violated the *Barton* Doctrine;
   (ii) find that through filing Count I of the Malpractice Actions, the Debtor and its counsel willfully violated the automatic stay;
   (iii) enjoin the 2019 Malpractice Action; and
   (iv) award Conway and his firm $207,211.72, representing their reasonable legal fees and costs incurred in defending against the Malpractice Actions.

(b) The May 4th Bridge Order (Bankr. Docket No. 283) is hereby extended until the District Court enters final disposition on this Report and Recommendation.

(c) The Clerk shall provide a copy of this Report and Recommendation and notice of its entry to the parties listed below.

Date: Jul 27 2021

/s/ Klinette H Kindred
Klinette H. Kindred
United States Bankruptcy Judge

Entered On Docket: July 27, 2021

Electronics copies to:

Robert Jackson Martin, IV
John S. Lopatto, III